**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **DENNIS JOHNSON, AIS # 220424,** | : |
| **Plaintiff,** | : |
| **vs.** | :    **CIVIL ACTION 13-00116-WS-N** |
| **EARNEST STANTON,** | : |
| **Defendant.** | : |

**REPORT AND RECOMMENDATION**

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*,

filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned

pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the

undersigned on Defendant's motion for summary judgment (Doc. 18) and Plaintiff's

opposition thereto (Doc. 20). After careful review of the pleadings, and for the reasons

set out below, it is recommended that Defendant's motion for summary judgment be

granted; and Plaintiff's action against Defendant be dismissed with prejudice.

**I.     Summary of Alleged Facts.**

At the time relevant to this complaint, Plaintiff Johnson was incarcerated at

Holman Correctional Facility ("Holman"), serving a life sentence for the 2006

convictions of murder, attempted murder, and second-degree assault.[1] (Doc. 1 at 4, 11).

Plaintiff claims on March 2, 2013,[2] while housed in disciplinary segregation, Officer

---

[1]     Since the filing of this complaint, Plaintiff has been transferred to and is currently
serving his prison sentence at Kilby Correctional Facility. (See Doc. 12).

[2]     Plaintiff's complaint and the grievance he filed March 4, 2013, alleges the
altercation with Defendant Stanton occurred on March 1, 2013. (Doc. 1 at 8, 10).
However, Defendant's affidavit, Defendant's filed supporting affidavits, the incident

Stanton used excessive force against him. (Id. at 8). Johnson petitioned the Court alleging First, Eighth, and Fourteenth Amendment violations against Defendant Stanton.

The altercation at issue in this action was precipitated by the removal of contraband items from Johnson's disciplinary segregation cell. It is the policy at Holman to restrict inmates in disciplinary segregation from having most personal possessions and to forbid them from obtaining canteen items while in segregated housing. (Doc. 18-4 at 1). These prohibited items, when found in a cell, are confiscated, inventoried, and stored until the inmate is released from segregated housing. (Id.). However, Plaintiff contends that any canteen item purchased *prior* to placement in disciplinary segregation is allowed, as was the case for him on March 2, 2013, when Defendant Stanton removed items from his possession that, as Plaintiff argues, should have been allowed because he purchased them while housed in general population, prior to his transfer to disciplinary segregation. (Doc. 1 at 6; Doc. 20 at 15).

Plaintiff's complaint asserts that on March 2, 2013,[3] he placed a canteen item outside his cell door with the intention of sending the good to another inmate. (Id.).

---

report, medical records, investigative report, and Plaintiff's response to Defendant's motion for summary judgment all declare March 2, 2013 as the incident date. (Doc. 18-2 at 1; Doc. 18-3 at 1; Doc. 18-4 at 1; Doc. 18-5 at 3, 5; Doc. 18-6 at 13; Doc. 20 at 2). Therefore, the Court will refer to March 2, 2013 as the date of incident in its report and recommendation.

[3] The exact timeline of events is unclear from Plaintiff's accounts of the altercation. Plaintiff's complaint states the canteen item was taken from outside his door on March 1, 2013, and that is when he made the threat to Officer Stanton, 30-minutes prior to being taken to the shower. (Doc. 1 at 6). In Plaintiff's response to Defendant's motion for summary judgment, however, Plaintiff's claims the threat occurred on March 2, 2013, prior to being taken to the shower. (Doc. 20 at 15). Additionally, Plaintiff contends that he had a confrontation the day before, March 1, 2013, with Stanton regarding a bag of coffee left outside his cell door. (Id.). Plaintiff's final claim is that the assault occurred in retaliation for "the statement Johnson made behind the closed cell door and the argument from the prior day concerning the bag of coffee." (Id. at 17).

According to Plaintiff, Defendant Stanton took the canteen item placed outside the cell door, at which time Plaintiff told Defendant, from behind the locked bars of his cell, that he was "in segregation for cutting an inmate that took his belongings." (Doc. 1 at 6) (grammatical corrections made).

A half an hour after Stanton confiscated the item from outside Plaintiff's cell, Plaintiff avers Defendant Stanton escorted him and other inmates to the shower. (Id.). While Plaintiff was taken to and from the shower without incident, he alleges that Stanton used excessive force against him once he returned to his cell. Johnson claims Officer Stanton ordered him to remain outside his cell while Stanton entered and searched the cell. (Id.). Stanton retrieved canteen items from the cell, then ordered Plaintiff to enter his cell, and Plaintiff asserts he complied with the order. (Id.). While Plaintiff was walking into his cell and his back was turned away from Stanton, Plaintiff alleges

> Stanton then stated 'I don't like the threat you made earlier,'. . . [and] "as Stanton [made] that last statement Johnson turned around and Stanton reached up, grabbed Johnson around the throat, and pushed him to the back of the cell onto his rack (prison bed) while slamming Johnson's head against the wall [and] then commence[d] to choke Johnson until he was unconscious while stating, 'I told you! I told you!'

(Doc. 20 at 16). Plaintiff states that during the altercation, Officer Pace stepped into the cell but did not intervene. (Id.). Johnson contends he was not released from Stanton's hold until Sergeant Smith entered the cell and physically pulled Stanton off of Plaintiff.[4]

---

[4]     The Incident Report from March 2, 2013 states that Officer Russell Johnson, a cubical officer on duty, observed the incident between Johnson and Stanton and radioed the supervisor, Sergeant Smith, for assistance. (Doc. 20 at 20). Plaintiff argues there is a dispute as to which officer called the supervisor for assistance. (Id.). Specifically, Plaintiff asserts that Defendant Stanton, in his affidavit, claims to have radioed for help in contradiction of the Incident Report identifying Officer Russell Johnson as the contacting

(Id. at 17). Plaintiff maintains Sergeant Smith "lifted Johnson up off of his bed as Johnson was just regaining consciousness," (Id.). Johnson's handcuffs were removed and Johnson was secured in his cell by Sergeant Smith and remained in his cell for half an hour before he was taken to the medical unit for assessment. (Doc. 1 at 6).

Plaintiff maintains that Stanton retaliated against him with excessive force for the comments he made half an hour before going to the shower.[5] Plaintiff alleges he suffers from ongoing nosebleeds and swelling in the back of his head from the force used against him by Defendant as well as "mental an emotional injuries." (Doc. 1 at 7-9).

In contrast, Defendant Stanton contends that on March 1, 2013, while he was on security check in the disciplinary segregation unit, he observed a bag of instant coffee on the floor outside of one of the cells. (Doc. 18-3 at 1). Items placed outside the cells are considered contraband items and are to be picked up and disposed of. (Id.). In accordance with prison procedure, Officer Stanton took the bag of instant coffee, not knowing to whom it belonged, and continued with his security check of the unit. (Id.). According to Defendant Stanton, Plaintiff did not threaten him at this time or articulate any response when the coffee was confiscated.

---

officer. (Doc. 20 at 20). However, the Court is not convinced as Plaintiff claims that this is a material dispute requiring a trier of fact. (Id.). Rather, the Court concludes that Defendant's affidavit and the Incident Report do not contain contradictory facts at all. Defendant Stanton's affidavit states "[a] supervisor was called in accordance with normal procedure. . . . In accordance with that procedure, I held [Johnson] there until Correctional Sergeant James Smith arrived." (Doc. 18-3 at 2). Defendant Stanton never stated or indicated that he, personally, radioed for assistance as Plaintiff contends. (See id.).

[5] Following the incident, charges of threating an officer were filed against Plaintiff, and Plaintiff countered the disciplinary charges by filing a grievance with the warden of Holman claiming the charges were conceived to cover up the excessive force used by Stanton and requested the disciplinary be disapproved and actions taken against Stanton. (Doc. 1 at 13-14). An investigation into Plaintiff's allegations was conducted, but no wrongdoing was found on the part of Officer Stanton. (See Doc. 18-5 at 5-9).

On March 2, 2013, Officer Stanton with the assistance of Officer Pace escorted Plaintiff and other inmates to the shower. (Id.). Stanton noticed a brown paper bag in Plaintiff's cell that appeared to have contraband items inside it, and when Plaintiff returned from the shower, Stanton performed a formal search of Plaintiff's cell and found restricted food items and a magazine. (Id.). These items were removed from the cell and Plaintiff was instructed to enter his cell. Defendant Stanton contends, and Plaintiff denies, (doc. 20 at 17) that Plaintiff stepped into his cell and stated to Defendant, "You ain't gonna keep taking shit from me; I'll cut your throat like I did that nigga down the hall," and came towards Defendant Stanton in an aggressive manner. (Doc. 18-3 at 2). Reacting to the threat, Defendant grabbed Plaintiff's right arm, put his hand on Plaintiff's chest, pushed Plaintiff on to his bed, and held him there to gain control of Plaintiff and the situation until a supervising officer reached the scene and removed Plaintiff's handcuffs and secured Plaintiff in his cell. (Id.). Defendant Stanton avers he did not attempt to harm Plaintiff and specifically denies hitting or choking Plaintiff and further denies that Plaintiff ever lost consciousness. (Id.).

Defendant Stanton's account of the incident is supported by the affidavits of non-defendants, Officer Jeff Pace (doc. 18-2) and Sergeant James Smith (doc. 18-4), the Incident Report (doc. 18-5 at 2-4), and the Investigation Report (doc. 18-5 at 5-13). Officer Pace avers that Plaintiff was being held in disciplinary segregation on March 2, 2013, for the violent offense of cutting another inmate, which Pace personally witnessed. (Doc. 18-2 at 1). Officer Pace assisted Defendant Stanton in escorting Plaintiff to the shower on March 2, 2013 and observed the altercation that followed. (Id.). Specifically, Pace witnessed Stanton remove prohibited contraband items from Plaintiff's cell and

heard Plaintiff threaten Defendant Stanton.  Officer Pace avers that Plaintiff "became angry" and "was out of control" after the canteen items were confiscated and that Plaintiff came "towards Officer Stanton, like he was going to attempt to head-butt or run into him" and "threatened Officer Stanton that he would cut his throat."  (Id.).  Officer Pace reiterates Defendant Stanton's reaction of grabbing Plaintiff by the arm and front of the shirt and restraining him until Sergeant Smith arrived.  Pace denies that Stanton ever hit or choked Plaintiff or that Plaintiff ever lost consciousness.  (Id.).

Furthermore, Sergeant Smith, the supervisor called to the scene on March 2, 2013, avers that it is normal protocol for a supervisor to be called to a disturbance or during a use of force at Holman.  (Id.).  When he arrived at Plaintiff's cell, he observed Defendant Stanton holding Plaintiff on Plaintiff's bed.  He did not witness Stanton hit or choke Plaintiff, and he asserts Plaintiff was alert and conscious.  (Id.).  Smith affirms that he ordered Defendant Stanton to release Plaintiff and Stanton complied; Sergeant Smith then removed Plaintiff's handcuffs, and Plaintiff was secured in his cell.  (Id.).  Plaintiff was subsequently taken to the medical unit for an evaluation.  (Id.).

The medical records submitted to the Court evidence that Plaintiff was examined in the medical unit at 10:55 p.m. on March 2, 2013, following the altercation.  (Doc. 18-6 at 13).  The completed "body chart" is void of any visible injuries to Plaintiff or of any symptoms or complaints of pain, trauma, or injury.  The notes on the chart reveal two pertinent statements: 1) that there were no physical injuries to Plaintiff's body, and 2) Plaintiff stated to the examining nurse, "He gonna regret putting his hands on me."  (Id.).  Following this initial exam, Plaintiff was seen on three other occasions with complaints he claimed related to the altercation with Defendant Stanton.

Plaintiff submitted a sick call request eight days after the incident and was examined on March 11, 2013 after complaining of throbbing headaches, nosebleeds, and a sore throat with difficulties swallowing. (Id. at 10). He was provided Pain Off for his headaches, throat lozenges for his sore throat, and Septa Soothe for his nasal passages. (Id. at 11). Additionally, on March 11, 2013, x-rays were conducted on Plaintiff's cervical spine and lower nasal bones to identify any internal complications or issues responsible for Plaintiff's subjective complaints. (Id. at 14-15). However, the radiology reports reveal unremarkable results finding no fractures, dislocations, or lesions explaining or corroborating Plaintiff's complaints. (Id. at 14). Again, on April 15, 2013, after submitting a sick call request, Plaintiff was seen for complaints of nosebleeds and migraine headaches that he claimed had been occurring "since the incident where officer Stanton choked [him]." (Id. at 5, 9). The exam showed no evidence of nose bleeds, as Plaintiff's nares were dry and intact. (Id. at 6). As for Plaintiff's complaint of headaches, he reported no head trauma and no associated symptoms with the headaches, like loss of consciousness, neck pain, dizziness, etc., but was again prescribed Pain Off for his symptoms. (Id. at 7-8). Lastly, Plaintiff was seen on April 29, 2013, with complaints that his throat had begun hurting again. (Id. at 2). The nurse, however, found no redness to Plaintiff's throat, but he was given throat lozenges to help with comfort. (Id. at 3).

Plaintiff filed this § 1983 action on March 11, 2013, asserting First, Eighth, and Fourteenth Amendment violations against Defendant Stanton.[6] (Doc. 1). Defendant

---

[6]      On May 7, 2013, Plaintiff filed a motion for preliminary injunction directing the defendant "to stop ongoing harm of actual inadequate medical care the Plaintiff is faced with by Defendants in denying Plaintiff requests to be taken to medical." (Doc. 8 at 2). The motion was denied by the Court due to Johnson's failure to meet his burden of persuasion on all four requisite elements necessary for injunctive relief; specifically, he

Stanton answered the suit and filed a special report with the Court denying all claims of a constitutional violation against Plaintiff and asserting the defenses of absolute and qualified immunity. [7] (Doc. 18 at 2). Defendant's answer and special report were converted by the Court to a motion for summary judgment, (doc. 19) and Plaintiff responded in opposition to the motion. (Doc. 20). Plaintiff seeks compensatory damages in the amount of $25,000, punitive damages in the amount of $50,000, and damages for emotional distress in the amount of $25,000 against Defendant Stanton in his individual capacity. (Doc. 1 at 9; Doc. 20 at 4). Defendant's motion and Plaintiff's response thereto are now before the Court.

## II.    Summary Judgment Standard.

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The <u>Federal Rules of Civil Procedure</u> grant this Court

---

failed to demonstrate a substantial threat of irreparable injury if his motion was not granted. (Doc. 21 at 3).

[7]    Plaintiff Johnson is suing Defendant in his individual capacity. (Doc. 20 at 4). Therefore, the absolute immunity against suits from damages that state officials are entitled to in their official capacities is not applicable in this action. <u>Harbert Int'l, Inc. v. James,</u> 157 F.3d 1271, 1278 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

However, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Dalrymple v. Reno,</u> 334 F.3d 991, 994 (11th Cir. 2003) (quoting <u>Hope v. Pelzer,</u> 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). With respect to Johnson's Eighth Amendment excessive force claims, qualified immunity does not apply. <u>See Skrtich v. Thornton,</u> 280 F.3d 1295, 1301 (11th Cir. 2002). With respect to Johnson's Eighth Amendment claims related to his medical treatment, the Court has found that Johnson's allegations do not establish a constitutional violation. Therefore, "there is no necessity for further inquiries concerning qualified immunity" with respect to those claims. <u>Saucier v. Katz,</u> 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. See Stabler v. Fla. Van Lines, Inc., No. 11-0103-WS-N, 2012 WL 32660, *5 (S.D. Ala. Jan. 6, 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is

proper when, "after an adequate time for discovery, a party fails to make a showing

sufficient to establish the existence of an essential element of that party's case."

McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal

quotation marks omitted).  "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the

evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment

may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal

citations omitted).  "After the nonmoving party has responded to the motion for summary

judgment, the court must grant summary judgment if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law."  AGSouth Genetics,

LLC v. Cunningham, No. 09-745-C, 2011 WL 1833016, *2 (S.D. Ala. May 13, 2011).

## III.   Discussion

As noted above, Johnson seeks redress pursuant to 42 U.S.C. § 1983 for an

alleged constitutional deprivation arising out of a physical altercation between himself

and Correctional Officer Stanton that took place on March 2, 2013 at Holman prison.

(Doc. 1).   Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress. . . .

42 U.S.C. § 1983 (1994).  The Eighth Amendment protects a prisoner from punishment

that is cruel and unusual. Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L.

Ed. 2d 443 (1989).  Specifically, the Eighth Amendment "prohibits the unnecessary and

wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).  The issue before the Court now is whether, under the circumstances of this case, a jury could reasonably conclude that Plaintiff's rights under the Eighth Amendment were violated by Defendant Stanton on March 2, 2013.  The Court will address Plaintiff's allegations against Defendant below.

A.      Eighth Amendment Excessive Force Claim.

Plaintiff claims that Correction Officer Stanton used excessive force against him in violation of the Eighth Amendment.  In order to establish an Eighth Amendment claim, a plaintiff must prove both an objective and subjective component.  First, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley v. Albers, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).  The factors used to determine whether there has been a violation of the Eighth Amendment in the prison security context are: the need for the application of force, the relationship between that need and the amount of force used, the threat

reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. <u>Hudson</u>, 503 U.S. at 7 (citing <u>Whitley</u>, 475 U.S. at 321).

The courts recognize that corrections officials often must make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'" <u>Hudson</u>, 503 U.S. at 6 (citing <u>Whitley</u>, 475 U.S. at 320). Moreover, an inmate "is not at liberty to ignore or disobey, without consequence, the lawful orders of his custodians or the rules and regulations of a jail." <u>West v. Sconyers</u>, 2010 U.S. Dist. LEXIS 123573, 2010 WL 4822084, *7 (M.D. Ala. 2010) (unpublished). "Strict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike." <u>Id</u>. However, "government officials may not use gratuitous force against a prisoner who has been already subdued or . . . incapacitated." <u>Skrtich</u>, 280 F.3d at 1303 (citations omitted). "The use of force must stop when the need for it to maintain or restore discipline no longer exists." <u>Id</u>. at 1304 (citations omitted).

Considering, first, the objective element of the excessive force claim, Plaintiff states that while he was handcuffed, Defendant Stanton grabbed him by the throat, hit his head into the wall while pushing him on to his bed, and choked him to the point of losing consciousness. (Doc. 20 at 16). Plaintiff claims as a result of Stanton's assault he sustained injuries of pain to the back of his head as well as periodic nosebleeds and headaches.

Inherent in the protection afforded by the Eighth Amendment is the principle that "not every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Hudson</u>, 503 U.S. at 9. The objective component of an excessive force claim

"necessarily excludes from constitutional recognition *de minimis* uses of physical force." Id. at 9-10. "*De minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind[,]'" are not within the scope of the Eighth Amendment. Id. at 10 (quoting Whitley v. Albers, 475 U.S. 312, 327, 106 S. Ct. 1078, 1088, 89 L. Ed. 2d 251 (1986) (internal quotation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d. Cir.), cert. denied, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973)).

The Supreme Court discusses but did not define "*de minimis* use of force" in Hudson, but suggested that the degree of injury received is at least relevant to determining whether more than *de minimis* force was used. See Hudson, 503 U.S. at 10 (blows causing bruising, swelling, loosened teeth and a cracked dental plate do not constitute a *de minimis* use of force). However, the Court rejected the argument that "serious" or "significant" injury is required to satisfy the objective component. Id. at 9. Moreover, the Court rejected the concept that any arbitrary quantum of injury is an absolute requirement of an excessive force claim, apparently out of concerns that certain forms of torture are capable of inflicting extreme pain without leaving any mark or tangible injury. See id. ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). While the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Id. at 7 (quoting Whitley, 475 U.S. at 321).

In the present case, there are no allegations of torture designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonably call it repugnant to the conscious of mankind. Therefore, if Plaintiff suffered only *de minimis* injuries that would be an important factor in determining whether more than *de minimis* force was used by Officer Stanton. Plaintiff's medial records show that he was examined in the medical unit at 10:55 p.m. on March 2, 2013 following the altercation with Defendant.[8] (Doc. 18-6 at 13). After the altercation, Plaintiff detailed none of the symptoms now articulated in his complaint, and the medical staff found no injuries to Plaintiff's body (the body chart states, "no physical injuries noted to [Plaintiff's] body"). (Id.). Upon returning from the medical unit, Plaintiff was asked to write a statement regarding the altercation with Officer Stanton to be attached to the Use of Force Report. (Doc. 18-5 at 3). Plaintiff complied by writing a single sentence, "I aint tripping about it!!" (Id. at 8-9). It is not until eight days after the incident that Plaintiff first requested medical treatment for and presented with complaints of nosebleeds, headaches, and a sore throat. (Doc. 18-6 at 12). Again, however, the medical staff found no injuries to Plaintiff, much less actual harm caused by trauma from an assault. Furthermore, the objective x-rays conducted on Plaintiff's neck and nose indicated no internal injuries or damage. A month later, Plaintiff was seen by the medical staff for complaints of nosebleeds and headaches but no visible signs of bleeding

---

[8] Plaintiff's complaint states that he was escorted to the medical unit 30 minutes after the altercation with Defendant. (Doc. 1 at 7). However, Plaintiff's response to the Defendant's Special Report claims Johnson remained in his cell for two hours after the incident before receiving medical treatment. (Doc. 20 at 3). This discrepancy of time is irrelevant to the Court's analysis as Plaintiff fails to prove injury caused by a delay in treatment, see *infra* at section III, C. Therefore, the medical exam he received on March 2, 2013 at 10:55 p.m. would evidence the same results whether he was examined and treated 30 minutes or two hours after the alleged assault.

or evidence of trauma were identified. (Id. at 5). Furthermore, Plaintiff's final medical examination revealed no observable injuries or signs of even a sore throat for which Plaintiff complained. (Id.at 2). In sum, the minor injuries of which Plaintiff articulates in his complaint have not been visible or provable to any medical professional, despite being thoroughly examined numerous times.

Even if the Court were to assume that Plaintiff suffered injuries more serious than those indicated in the prison medical records, those injuries would not support a finding of a constitutional violation under the circumstances of this case. In determining whether the extent of Plaintiff's injuries indicates the use of excessive force, the Court finds instructive the types of injuries which have been held by this Court, and other courts, to be insufficient to support excessive force claims under the Eighth Amendment, such as: a scratch on plaintiff's side from a correctional officer pushing, shoving, and hitting plaintiff in an effort to force him to comply with an order to pick up his hoe and get back to work, Walker v. Thames, No. 97-1104-RV-L, 2001 U.S. Dist. LEXIS 6090, 2001 WL 394911, * 6 (S.D. Ala. 2001) (unpublished); scratches on plaintiff's elbow, bump and one-half inch skin tear behind the ear, abrasion on the shoulder, and jaw pain from correctional officer pushing plaintiff into a glass window while taking him to a holding cell, Lanier v. Fralick, No. 98-0923-AH-L, 2000 U.S. Dist. LEXIS 18041, 2000 WL 1844679, *1-2, 5-6 (S.D. Ala. 2000) (unpublished); blow to the forehead with a baton, resulting in no bruising or swelling, Clark v. Johnson, No. 97-00538-AH-L, 2000 U.S. Dist. LEXIS 15347, 2000 WL 1568337, *18-19; broken bone and digestive problems, Lassan v. City of Orange Beach, No. 99-0130-CB-M, 2000 U.S. Dist. LEXIS 18031, 2000 WL 1844683 (S.D. Ala. 2000); a sore, bruised ear lasting three days, Siglar v.

Hightower, 112 F.3d 191, 193 (5th Cir. 1997); bruises on a prisoner's back from being shoved into a door frame, DeWalt v. Carter, 224 F.3d 607, 620 (7th Cir. 2000); a bruised shoulder from being shoved into a wall, Markiewicz v. Washington, 1999 U.S. App. LEXIS 5997, 1999 WL 196596 (7th Cir. 1999) (unpublished); a 1.5 inch scratch on the back of the hand from handcuffs, Schoka v. Swinney, 1995 U.S. App. LEXIS 9922, 1995 WL 251126 (9th Cir. 1995) (unpublished); daily headaches, not requiring treatment, from being hit with a water bucket, Lunsford v. Bennett, 17 F.3d 1574, 1582 (7th Cir. 1994); and a sore and swollen thumb from being hit with keys, Norman v. Taylor, 25 F.3d 1259, 1262-63 (4th Cir. 1994).[9]

Although the Court is aware that, even in the absence of serious or significant injury, a plaintiff can establish a constitutional claim based on excessive force, Defendant Stanton's actions in this case, as described by Plaintiff, do not involve diabolic or inhumane torture designed to inflict extreme pain without leaving any mark or tangible injury, nor are they otherwise so egregious that one could reasonably call them repugnant to the conscience of mankind.  Assuming, as Plaintiff alleges, that Officer Stanton unjustifiably choked him and struck his head on the wall while pushing Johnson onto his bed, his injuries were *de minimis* and simply do not support his claim that he was subjected to anything other than *de minimis* force, which is insufficient to establish a constitutional violation under the Eighth Amendment. While the Court certainly does not

_____

[9]     On the other hand, the following types of injuries have been held to be sufficient to support excessive force claims: cuts, scrapes and contusions to the face, head, and body from a group beating, Gomez v. Chandler, 163 F.3d 921, 924-25 (5th Cir. 1999); a broken finger, Escobar v. Zavaras, 149 F.3d 1190, *3 (10th Cir. 1998) (unpublished); and permanent scarring and numbness from handcuffs, Davidson v. Flynn, 32 F.3d 27, 29 n. 1 (2d Cir. 1994).

condone the unjustified use of force by prison officials, Plaintiff's allegations regarding Officer Stanton's use of force against him fall short of what is required to state a claim for excessive force under the Eighth Amendment.

Furthermore, even if Plaintiff had satisfied the objective element of his Eighth Amendment claim, his claim would still fail inasmuch as he has failed to prove the subjective component of his Eighth Amendment claim.  In <u>Hudson</u>, the Supreme Court recognized that, whenever guards use force to keep order, they "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." <u>Hudson</u>, 503 U.S. at 6 (quoting <u>Whitley</u>, 475 U.S. at 321-22).  Thus, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id</u>. at 7.  In making this determination, the Court considers the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts made to temper the severity of a forceful response, and the extent of injury suffered. <u>Hudson</u>, 503 U.S. at 7 (citing <u>Whitley</u>, 475 U.S. at 321).

With respect to the amount and type of force used by Officer Stanton, it is without question that the use of choking as a means of gaining control over an inmate is a serious and potentially hazardous form of physical force.  However, in this particular instance, the amount of force appears to have been minimal, as evidenced by the absence of any injury related to the choking.  The evidence shows that within two hours after the choking incident, Plaintiff was taken to the health care unit where he was examined thoroughly by the medical staff.  The "body chart" completed at that time reflected no sign of any injury caused by choking, whether in the form of marks, scratches, redness,

bruising, or any other symptom or injury related to choking. (Doc. 18-6 at 13). With respect to efforts made to temper the severity of the response, the Court notes that, as soon as the altercation began when Plaintiff stopped following Defendant's order to enter his cell and instead turned to face Officer Stanton, Stanton grabbed Plaintiff and attempted to subdue Plaintiff and diverted an escalating situation by holding Plaintiff on his bed until Sergeant Smith arrived. Upon arrival, Plaintiff was released, Officer Stanton exited the cell, and Sergeant Smith removed Plaintiff's handcuffs and secured him in his cell. By having another officers intercede and secure Plaintiff, a deteriorating situation was diffused and the further use of force or injury was prevented.

Finally, it is undisputed that Plaintiff threatening Stanton, whether the threat was made thirty minutes before being taken to the shower, as Plaintiff claims, or directly after his cell was searched when Defendant asserts Plaintiff told him, "You ain't gonna keep taking shit from me; I'll cut your throat like I did that nigga down the hall." The parties agree that Plaintiff moved towards Stanton's direction. Stanton and Pace submit that Plaintiff came towards Defendant Stanton in an aggressive manner. (Doc. 18-3 at 2). And, Plaintiff states he was entering his cell with his back turned from Defendant Stanton and, just as Stanton mentioned he didn't like the threat from earlier, Plaintiff admits turning to face Stanton. Given these facts, it is reasonable to understand how Officer Stanton would perceive to be threatened by Plaintiff, a convicted murderer, being held in disciplinary segregation for stabbing another inmate, when Plaintiff ceased walking in a forward direction and turned his body to directly face Stanton, thereby disobeying the order he was given to enter his cell. Even when viewed in a light most favorable to the Plaintiff, the evidence simply does not support Plaintiff's claim that Officer Stanton,

totally without penological justification, maliciously and sadistically attacked him for the very purpose of causing harm. Furthermore, the undisputed and objective medical evidence shows that no injury or harm occurred from the altercation.

Bearing all of these factors in mind, the Court finds that, under the circumstances of this case, the force used by Officer Stanton against Plaintiff in his cell on March 2, 2013 was not constitutionally excessive. Therefore, Plaintiff's Eighth Amendment excessive force claim against Defendant Stanton related to the choking incident fails as a matter of law, and Defendant Stanton's motion for summary judgment on this claim is due to be granted.

B.     Eighth Amendment Failure to Intervene Claim.

The Eighth Amendment is only violated by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate[.]" Farmer v. Brennan, 511 U.S. 825, 828 (1994). "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . . However, in order for liability to attach, the officers must have been in a position to intervene." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)). An officer who fails to intervene in a fight can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff." Glispy v. Raymond, No. 06-14269-CIV-MARTINEZ-WHITE, 2009 U.S. Dist. LEXIS 77100, 2009 WL 2762636 (S.D.Fla. Aug. 28, 2009) (citing Ensley, 142 F.3d at 1407; Byrd v. Clark, 783 F.2d 1002 (11th Cir. 1986)).

Plaintiff did not name Officer Pace as a defendant in this action, but he does

articulate, "C.O.I. Pace also stepped into the cell but did nothing to assist Stanton nor anything to stop Stanton." (Doc. 20 at 16). This phrasing reads as an attempt to state a claim against Officer Pace for failing to intervene during the alleged assault between Plaintiff and Defendant. When considering a *pro se* litigant's allegations, a court gives them liberal construction holding them to a more lenient standard than those of an attorney. See Haines, v. Kerner, 404 U.S. 519, 520 (1972). Therefore, giving the Plaintiff every benefit of the doubt and out of judicial efficiency, the Court will address this potential claim.

Inasmuch as the Court has concluded that no reasonable jury could find that Defendant Stanton used excessive force against Johnson, no reasonable jury could find that Officer Pace was liable for failing to intervene. If no excessive use of force takes place, an officer has no duty to intervene. Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009); McBride v. Rivers, 170 F. App'x 648, 658 (11th Cir. 2006) (defendant could not be liable for failing to intervene after court determined no excessive force had been used). Thus, Plaintiff's claim for failure to intervene, assuming *arguendo* he intended to make such a claim, should be dismissed.

C.      Eighth Amendment Denial of Medical Treatment Claim.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). In order to demonstrate a denial of medical care in violation of the Eighth Amendment, Johnson must prove both an objective and subjective component. To meet the objective element,

Stinson first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (internal quotation marks and citation omitted). In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Johnson must further demonstrate "deliberate indifference" to a serious medical need. Farrow, 320 F.3d at 1243.

In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970. In interpreting Farmer and Estelle, the Eleventh Circuit explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively

insufficient response to that need").  Farrow, 320 F.3d at 1245-46.  In addition, where a plaintiff complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay.  See Hill, 40 F.3d at 1188.  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  Id.

In analyzing whether or not Johnson suffered a serious medical need that required immediate medical attention, the Court relies on the medical record and the facts presented in the light most favorable to the nonmovant, Johnson.

Johnson has not proffered any probative evidence which suggests deliberate indifference on the part of Defendant.  Nor has he proffered any evidence to support his contention that the medical care he received was inadequate. First, there is no evidence that Defendant Stanton was responsible for Johnson's medical care.  Second, Johnson has not submitted any "verifying medical evidence" showing that the 30-minute to two-hour delay in medical treatment resulted in the diminishment of his physical or mental health. Hill, 40 F.3d at 1188.  No visible injuries were ever seen on Plaintiff's body and objective medical tests confirmed no internal injuries to Plaintiff.  Plaintiff presented with symptoms he alleges were from the altercation with Stanton over a week after the incident and only two other times throughout a two month period.  The absence of such evidence further undermines a finding that Defendant was deliberately indifferent to Johnson's serious medical needs.  While "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain," Hill, 40 F.3d at 1187, the record in this case simply does not show

such. "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989). "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." <u>Hill</u>, 40 F.3d at 1189.

Considering all of the circumstances surrounding the treatment that Johnson received for his medical problems, including the objective medical evidence, along with Johnson's vague and conclusory allegations, the undersigned finds that Johnson has not presented facts which suggest that Defendant Stanton was deliberately indifferent to Johnson's medical needs following the altercation with Defendant Stanton. To the contrary, the evidence reflects that prison staff, with the aid of the medical staff at Holman, responded to the medical complaints and needs presented by Johnson. Thus, Johnson has failed to establish the subjective element of his denial of medical care claim.

D.    <u>First Amendment Retaliation Claim.</u>

Defendant is also entitled to summary judgment in his favor with respect to Plaintiff's retaliation claim inasmuch as Johnson presents no specific facts that would support a retaliation claim against Stanton. The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. <u>Thomas v. Evans</u>, 880 F.2d 1235, 1242 (11th Cir. 1989). "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." <u>Id</u>. at 1242. Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." <u>Id</u>. To establish an actionable First Amendment retaliation claim, "the inmate must establish these elements: (1) his speech was

constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005)). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. Smith, 532 F.3d at 1278. Claims alleging unconstitutional retaliation must be factual and mere conclusory allegations of retaliation will not suffice. Adams v. James, 797 F.Supp. 940, 948 (M.D. Fla. 1992); Frazier v. Dubois, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

Johnson asserts that Officer Stanton assaulted him because he previously threatened Stanton after he (Stanton) confiscated the canteen item Johnson intended to giving to another inmate. Johnson admits telling Defendant Stanton that he, Johnson, was currently housed in disciplinary segregation for cutting an inmate who took his belongings. However, the exact timeline of events establishing when this threat was made is unclear from Plaintiff's accounts of the altercation. In Plaintiff's complaint, he states that a canteen item (which he does not identify) was taken from outside his door on March 1, 2013, and that is when he made the threat to Officer Stanton, 30-minutes prior to being taken to the shower. (Doc. 1 at 6). In Plaintiff's response to Defendant's motion for summary judgment, however, Plaintiff states that March 2, 2013 he threatened Officer Stanton, 30-minutes prior to being taken to the shower, for confiscating the canteen item left outside his cell door. (Doc. 20 at 15). And, finally, Plaintiff contends that he had a

confrontation with Stanton the day before, March 1, 2013, regarding a bag of coffee left outside his cell door.  (Id.).

Despite the factual contradictions, Plaintiff admits to threatening Officer Stanton and admits to turning to face Stanton, in direct opposition to Stanton's order for Johnson to enter his cell on March 2, 2013 after his cell was searched by Stanton.  Reading the facts in the light most favorable to Plaintiff, the nonmovant, the complaint does not allow the court to reasonably infer that Johnson was assaulted due to a retaliatory motive harbored by Stanton.  In other words, the chronology of events set forth by Johnson, and the contradictory timeline, fails to convince this Court that his comment to Stanton on March 1, 2012 or March 2, 2013 was causally related to the defendant's actions on March 2, 2012.  What is clear to the Court is that Johnson, at some time, did threaten Stanton, and, furthermore that Johnson disobeyed a direct order to enter his cell by ceasing to walk forward and instead turning to face Stanton in a manner Stanton perceived as threatening. Johnson presents a mere conclusory allegation that Defendant's actions were retaliatory. Thus, summary judgment is proper on Plaintiff's retaliation claim because Plaintiff has not established a causal relationship between his comment on March 1, 2012 (or March 2, 2013) and the alleged assault by Officer Stanton.

E.      Dismissal pursuant to 42 U.S.C. § 1997e(e).

In the alternative to dismissal of this action for the reasons stated above, this action is due to be dismissed pursuant 42 U.S.C. § 1997e(e).  Section 1997e(e) states that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

In this action, Plaintiff seeks compensatory damages in the amount of $25,000, punitive damages in the amount of $50,000, and damages for emotional distress in the amount of $25,000 against Defendant Stanton in his individual capacity. (Doc. 1 at 9; Doc. 20 at 4). Pursuant to § 1997e(e), Plaintiff may not recover compensatory or punitive damages without a showing of actual injury, and he fails to prove any actual or visible injury suffered from the alleged March 2, 2013 assault. Therefore, Plaintiff would only potentially be able to recover nominal damages for any claimed "mental and emotional injuries," (doc. 1 at 8) if his action were successful. However, Plaintiff did not request relief for nominal damages in his complaint, only the significant monetary amount of $25,000. See Carey v. Piphus, 435 U.S. 247, 266-67 (1978) (holding if plaintiffs were entitled to nominal damages for the violation, the damages should not exceed one dollar); Kyle v. Patterson, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."). Therefore, alternatively, Plaintiff's action is also due to be dismissed pursuant to 42 U.S.C. § 1997e(e).

## IV.    **Conclusion.**

Based upon the foregoing reasons, it is recommended that that Defendant's motion for summary judgment be **granted**, and Plaintiff's action be **dismissed with prejudice**.

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific

written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." Dupree v. Warden, Attorney Gen., State of Ala., 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 9TH day of May, 2014.


/s/ Katherine P. Nelson
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE